[Civ. No. 6930. Fifth Dist. Oct. 26, 1982.]

JAMES J. JENSEN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
BIGGE DRAYAGE COMPANY et al., Respondents.

**COUNSEL**

Froba & Frailing, Froba, Frailing & Rockwell, David J. Froba and David N. Rockwell for Petitioner.

F. Clinton Murphy, Leonard M. Levy, Robert McEvilly, Richard W. Younkin, William B. Donohoe and Raymond G. Agnew for Respondents.

**OPINION**

### STATEMENT OF FACTS

**ZENOVICH, Acting P. J.**—On May 22, 1978, petitioner injured his lower back while at work. At that time, he was working for N & J Water Truck Company.

In 1979, petitioner went to work for Bigge Drayage Company (Bigge). On July 10, 1979, he sustained an injury arising out of and occurring in the course of his employment. He was off work for about five weeks thereafter and received medical treatment during that period.

From August 9, 1979, until March 15, 1980, petitioner did not seek or receive medical treatment for his back.

After petitioner was released to return to work in August 1979, he was rehired at N & J Water Truck Company as a mechanic. During this employment, petitioner did not engage in any heavy lifting. He was assigned an assistant to do the heavy lifting. Petitioner testified that while at work he suffered back pain which would increase as the work day progressed. Petitioner was laid off of this employment on November 1, 1979.

On March 15, 1980, while at home, petitioner attempted to move a heavy object. He testified that during this activity he felt a popping sensation in his back and suffered severe back pains which required him to go to a hospital.

Following petitioner's injury on March 15, 1980, he was treated by Dr. Milton David. A medical report prepared by Dr. David stated that it was his opinion the March 1980 injury was a "continuation of the previous industrial injury which occurred in March of 1979. At that time he probably sustained a tear of the anulus fibrosus and had healing of that torn disc. I believe the disc has bothered him up to the present time and this present episode most likely represents a re-tear of the anulus fibrosus without nerve root impingement or disc herniation."

Petitioner submitted to the board a medical report dated December 1, 1980, from Dr. Eugene Galvin. Galvin believed that petitioner's disability was permanent and stationary and described it as follows: "With a history of two episodes of back pain in a relatively short time, I feel that this gentleman should be placed into category B of the WCAB Guidelines. I do feel that he will need continued medical care in the future. As far as apportionment is concerned, I believe that this gentleman as far as I can determine had no problem with his back until he was injured in July and then had a second episode. I would apportion 75% to his initial injury on July 10, 1979 and 25% to the episode of aggravation on March 15, 1980."

Respondent Transport Indemnity Company (Transport) submitted to the board a medical report from Dr. Robert McIvor dated January 16, 1981. McIvor stated in his report that petitioner was "precluded from work involving heavy lifting, bending, and stooping, classification D, Guidelines of Industrial Disability. On the other hand, I would reverse the apportionment suggested by Dr. Galvin in his report, and put perhaps 25% of his present disability and problems in the lower back on the residual from the injury at Bigge, and then 75% to whatever happened in March 1980 around his own home."

The workers' compensation judge (judge) submitted a rating instruction as follows: "Injury to low back. Applicant precluded from work requiring

heavy lifting or repeated bending, or repeated stooping. Apportionment: One-half to this injury.''

The findings and award filed by the judge on August 25, 1981 (hereafter findings), decided the issues of permanent disability and apportionment as follows: ''2. The injury caused permanent disability of 10¾% after apportionment, in the total amount of $2,327.50, and all due and payable.''

In his recommendation to the board, the judge justified his finding on apportionment as follows: ''Applicant submitted a report by Eugene Galvin, M.D. dated December 1, 1980 (Exhibit 2), and the Defendant submitted a report of Robert R. McIvor, M.D. dated January 16, 1981 (Exhibit A). Dr. Galvin stated in his report that he considered the Applicant's condition to be permanent and stationary as of August 24, 1980 and he considered the Applicant's disability as a preclusion from very heavy work. He apportioned the disability between the industrial injury of July 10, 1979 (75%), and the non-industrial injury of March 15, 1980 (25%). Dr. McIvor examined the Applicant in December, 1980 and also believed that Applicant's condition was permanent and stationary. Dr. McIvor recommended a preclusion from heavy lifting, repeated stooping and repeated bending, and he attributed 25% of the permanent disability to the industrial injury of July 10, 1979 and 75% to the non-industrial injury of March 15, 1980. The undersigned accepted the opinion of Dr. McIvor concerning overall permanent disability but apportioned ½ to the industrial injury. The apportionment is within the range of the opinions expressed by Dr. Galvin and Dr. McIvor.''

In its opinion on reconsideration, the board gave the following reason for affirming the judge's finding on permanent disability and apportionment: ''As to the issue of permanent disability; we have concluded that the judge's apportionment of liability for permanent disability between the industrial and nonindustrial injuries is within the range of the medical opinions expressed by Dr. Galvin and Dr. McIvor, and is justified thereby. (*U.S. Auto Stores* v. *WCAB (Brenner)* (1971) 4 Cal.3d 469, 26 CCC 173. We will therefore affirm the judge's finding as to permanent disability and apportionment.''

DISCUSSION

■ The sole issue before this court is the propriety of the board's apportionment of liability for petitioner's permanent disability between an industrial injury and a subsequent nonindustrial injury.

The board affirmed the judge's apportionment determination. The rating instruction establishes that the judge determined petitioner's permanent disabilty to be a preclusion "from work requiring heavy lifting or repeated bending, or repeated stooping" and then ordered the award reduced by one-half as "apportionment." It is apparent that the judge determined what petitioner's overall current disability was and then apportioned that disability based upon the percentage of the current disability which was attributable to the 1979 injury.

The sole authority for apportioning in this manner is Labor Code sections 4663[1] and 4750.[2] (Cf. *State Comp. Ins. Fund* v. *Industrial Acc. Com.* 1961) 56 Cal.2d 681, 684 [16 Cal.Rprt. 359, 365 P.2d 415]; *Gay* v. *Workers' Comp. Appeals Bd.* (1979) 96 Cal.App.3d 555 [158 Cal.Rptr. 137]; *Franklin* v. Workers' Comp. Appeal Bd. (1978) 79 Cal. App.3d 224, 235 [145 Cal.Rptr. 22]

This court concludes that sections 4663[3] and 4750 do not apply to allow apportionment of permanent disability to a nonindustrial injury suffered after an industrial injury. Section 4663 requires there to be a preexisting disease; since no preexisting disease is at issue in this case, section 4663 is not applicable. Section 4750, by its express terms, only applies to preexisting nonindustrial disabilities; this case does not involve any preexisting nonindustrial disabilities. Respondents concede that the apportionment at issue is not sustainable under these sections.

This court rejects the board's contention that the apportionment at issue is authorized by analogy to those situations "where the Board is called upon to decide apportionment between two specific industrial injuries to the same part of the body." The authorities referred to by the board either involve an application of section 4750 where the disability from the prior injury is permanent or involves apportionment between different employers. (See, e.g., *Royal Globe Ins. Co.* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 60, 63-64 [45

---

[1]Labor Code section 4663 provides as follows: "In case of aggravation of any disease existing prior to compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

[2]Labor Code section 4750 provides as follows: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

[3]All section references are to the Labor Code unless specified otherwise.

Cal.Rptr. 1, 403, P.2d 129]; *Gardner* v. *Industrial Acc. Com.* (1938) 28 Cal.App.2d 682, 683-684 [83 P.2d 295].) Apportionment between different employers may not be used to diminish the recovery of an employee. (See *Zenith Insurance Co.* v. *Workers' Comp. Appeals Bd.* (1981) 124 Cal. App.3d 176, 185 [176 Cal.Rptr. 920].)[4]

This court also rejects for two reasons respondent Transport's argument that the board's finding of 10¾ percent disability after apportionment may be sustained on the following theory: "What the doctors should have directed their attention to was the permanent disability existing by reason of the 1979 injury which had stabilized prior to the industrial 1980 injury.

"What the Board found was that the 1979 injury caused permanent disability of 10¾%. The use of the words 'after apportionment' is unfortunate. However, the effect clearly was to find that this injury caused a permanent disablity of 13% standard which modifies to 10¾% after adjustment for occupation and age."

Respondents' contention amounts to an attempt to relitigate the board's findings that the 1979 industrial injury was a cause of petitioner's disability and that petitioner suffered permanent disability of 21½ percent. Those findings are now final and are binding upon respondents.

The finality of the board's findings that all of the disability at issue was industrially caused precludes apportionment unless section 4663 and 4750 are applicable. This court's conclusion that sections 4663 and 4750 do not authorize apportionment to a subsequent nonindustrial injury as was done in this action makes it unnecessary to remand this action to the board for reconsideration on the issue of apportionment.

The board's decision after reconsideration dated November 16, 1981, is annulled only insofar as it affirmed the determination that the industrial injury caused petitioner "permanent disability of 10¾ percent after apportionment" and the award of attorney fees; except as annulled above, said decision after reconsideration is affirmed. The board is directed to enter a new order in light of this opinion determining that the industiral injury

---

[4]Recently, the case of *Savage Plumbing Co.* v. *Workers' Comp. Appeal Bd.* (1982) 131 Cal.App.3d 517 [182 Cal.Rptr. 485] has created an exception to the above stated rule which limits the liability of an employer, thus reducing an employee's recovery, where the second employer resides out of California. Even assuming that the exception created by *Savage* is good law, it is inapplicable under the circumstances in this case where the liability of a single employer for a single industrial injury is at issue. A holding otherwise would conflict with the rule that apportionment based upon pathology (causation) of a medical condition is inappropriate. (Cf. *Gay* v. *Workers' Comp. Appeals Bd., supra,* 96 Cal.App.3d 555, 562.)

caused petitioner permanent disability of 21½ percent without apportionment, awarding petitioner appropriate compensation for a permanent disability of 21½ percent without apportionment, and modifying the amounts awarded for attorney fees as may be appropriate in light of this new award for permanent disability.

Andreen, J., and Hammer, J.,* concurred.

A petition for a rehearing was denied November 24, 1982, and the opinion was modified to read as printed above. The petitions of respondents Bigge Drayage Company and Transport Indemnity Company for a hearing by the Supreme Court were denied January 19, 1983. Grodin, J., was of the opinion that the petitions should be granted.

---

*Assigned by the Chairperson of the Judicial Council.